PETER J. CALDARONE *et al. vs.* ZONING BOARD OF REVIEW OF THE CITY OF PROVIDENCE.

DECEMBER 31, 1957.

PRESENT: Condon, Roberts, Andrews and Paolino, JJ.

ANDREWS, J.  This is a petition for certiorari to review and quash the decision of the respondent board granting the application of Anthony Tarro for a variance under the zoning ordinance of the city of Providence to permit him to conduct a funeral home in a dwelling house owned by him in an R-4 multiple dwelling zone.  The writ was issued and pursuant thereto the board has made due return to this court of a certified copy of the pertinent records.

In his application the applicant, among other things, states that he bought the property to provide adequate facilities for expanding his business; that he proposed to use the first floor for a funeral home and the second floor for his residence; that "Within 100 ft. of this property there is a drug & spa, package store, and an auto top shop"; that before 1951 this lot was zoned for business; and that he wanted permission to put up a bronze sign on the front of the building and another sign over the front entrance identifying the nature of the business.

The premises are located at 425 Broadway, one of the old and well-known streets of Providence.  The lawyers for the petitioners and the lawyer and architect for the applicant made certain statements.  Preceding the hearing the board took a view but has not furnished us with any de-

tails of what it saw. The petitioners, according to their lawyers, live on either side of the premises and believe that a funeral home will depreciate the value of their properties. Gennaro Onorato, who lives across the street and has a sick wife, objected to having a funeral home opposite his house. It appears that for some ten years the lower part of the house in question had been occupied by two lawyers who did not live there. This was a nonconforming use that survived the passage of the ordinance in 1951. The applicant's lawyer stated that there are 194 units of one zone or another from La Salle Square on Broadway and only sixteen of them are used for residences. It is clear that there are several business and commercial establishments in the immediate neighborhood but the limits of this particular zone do not appear in the record. There was no evidence of any use change in this area since it was placed in zone R-4 in 1951.

Before the hearing the board sought the opinion of the city plan commission. The pertinent part thereof reads: "The granting of this petition would create a new nonconforming use where none now exist. The gradual elimination of nonconforming uses should be the precedent rather than adding to or creating new ones. The City of Providence has recently enacted a Housing Code and has embarked upon an Urban Renewal Program both of which would be made more difficult of accomplishment if this petition were granted. Therefore, it is recommended that this petition be denied."

The board held the matter for advisement for several weeks and filed a decision containing among others the following paragraphs:

"Whereas, in the opinion of the members of the Zoning Board of Review, the proposed site is no longer suitable for residential purposes because of the existence of various commercial uses in the immediate neighborhood, and

> Whereas, an unnecessary hardship is imposed upon the owner of said property in limiting its use for residential purposes, and
>
> Whereas, adequate provision has been made for the off street parking of vehicles in connection with the proposed use of the premises as a funeral home, and
>
> Whereas, the Board finds that said proposed use will not cause any injury to the appropriate use of the neighborhood properties and that in its judgment the public convenience and welfare will be substantially served."

It thus appears that the real basis of the decision of the board is its opinion that the proposed site is "no longer suitable for residential purposes because of the existence of various commercial uses in the immediate neighborhood," and this, too, in the absence of evidence of any use change since it was zoned for residences in 1951. If this site is no longer suitable for residences for the above-named reasons the homes of petitioners and of Gennaro Onorato, who lives across the street, are likewise unsuited for residential use and all the more so because they are next door to business places but they act as a cordon and tend to insulate this site from business. These neighbors, however, want to continue to use their houses for residences, and while they cannot complain of existing nonconforming uses they have a right to object to a new nonconforming use that will tend to make their houses less desirable as residences than they are now. Funeral homes are allowed in C-2 zones. In *Drabble v. Zoning Board of Review*, 52 R. I. 228, 231, we recognized that funeral homes are "undesirable in residential districts and * * * may well have a tendency to decrease the value of real estate in the immediate vicinity."

The finding in the last "Whereas" paragraph of the board's decision in the instant case amounts to a statement that this area should be rezoned for business, a function of the city council and not of the board. This board has fallen into the same error as did the Warwick board.

In *Matteson* v. *Zoning Board of Review of Warwick*, 79 R. I. 121, 123, the board stated: "It is the opinion of the Board that the *original zoning* of the area *was improper* because Zoning Lots 10, 11, 19, 20, 25 and 26 for residential purposes, when all are within a hundred feet of the railroad tracks, failed to take into consideration the undesirability of the area for residential purposes and also disregards its potential value as business or industrial property." In that case this court stated at page 122: "After a careful examination of the decision and the reasons assigned therefor we are of the opinion that the conclusion was arbitrary and illegal. It appears therefrom that the board based the decision largely upon its opinion as to the propriety and wisdom of the zoning ordinance of Warwick * * *."

Again in *Allan* v. *Zoning Board of Review of Warwick*, 79 R. I. 413, this court said at page 415: "After a careful examination of the decision and the reasons assigned therefor we are of the opinion that the conclusion was arbitrary and illegal. It appears therefrom that the board based such decision largely upon its own expressed opinion that the entire area upon which the lots in question are situated, although zoned for *residential purposes,* is no longer suitable for such purposes and, inferentially, that in reality it should be zoned for business. The board seeks to bring about that result in the instant case by granting a variance from the present zoning law. It thus tries by indirection to do for the westerly side of Post Road what amounted to an attempt to amend the ordinance, which is clearly beyond the powers expressly delegated to it. Such change can be brought about only by the body authorized to enact and amend the ordinance, namely, the city council."

The applicant here sought a variance. The pertinent provision of the enabling statute, general laws 1938, chapter 342, §8, reads: "The board of review shall have the following powers: * * * c. To authorize upon appeal in specific cases such variance in the application of the terms of the

ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done."

The very words of the statute cast upon the applicant for a variance a heavy burden and in *Heffernan* v. *Zoning Board of Review*, 50 R. I. 26, 30, this court stated: "We regard the term 'hardship', as used in the ordinance, to have some reference to the degree of the interference with ordinary legal property rights, and to the loss or hardship which would arise therefrom. We think the expression should be interpreted to refer to a 'hardship' peculiar to the situation of the applicant, which is of such a degree of severity that its imposition is not necessary to carry out the spirit of the ordinance, and amounts to a substantial and unnecessary injustice to the applicant."

The applicant must show a *peculiar* hardship. All zoning restrictions are hardships and this applicant shows no greater hardship than his neighbors. Unless the granting of variances is restricted to real and peculiar hardships the other owners in the zone involved will be deprived of their right to use their property for nonconforming uses without any substantial consideration. This record is absolutely barren of any evidence that this house cannot be used for residential purposes just as well as the three houses of the owners who testified. Since it is in a multiple dwelling zone it can be used for several families. This is not like the rather common situation of an old vacant house in a one-family zone which is too big for one family and cannot be converted into a multiple dwelling because of the zoning restrictions. It is also unlike land which has never been improved but is so high priced that only an expensive house should be put upon it yet is near noisy activities that make it highly undesirable for residential use. While it may be that the applicant had evidence of peculiar hardship the

record does not contain such evidence and the lack thereof is fatal to his case.

The petition for certiorari is granted and the decision of the respondent board is quashed.

*Haig Barsamian, Angelo Cianciarulo, Waldman & Waldman, Morris S. Waldman,* for petitioners.

*William E. McCabe,* City Solicitor, *Harry Goldstein,* Assistant City Solicitor, for respondent.

*John P. Bourcier,* for applicant.